IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA

v.                                                                                      No. 2:25-cr-00127-MIS-JHR

RICARDO ARRIOLA,

       Defendant.

**ORDER DENYING ACCEPTANCE OF RESPONSIBILITY**

**THIS MATTER** is before the Court regarding the Plea Agreement ("Agreement") of Defendant Ricardo Arriola ("Defendant"). ECF No. 21. The Court began a Sentencing Hearing on June 18, 2025 but did not complete it. ECF No. 31. Defendant filed a Sentencing Memorandum ("Memorandum") on October 27, 2025 to address the Agreement's acceptance of responsibility provision. ECF No. 32. Upon due consideration of the parties' submissions, the record, and the relevant law, the Court will **DENY** Defendant's request to apply a downward adjustment for acceptance of responsibility to Defendant's sentence.

**I. Background**

       Defendant was arrested on October 24, 2024 on suspicion of transporting an illegal alien. Compl. at 1, ECF No. 1. At 8:30 that morning, Defendant stopped his vehicle—a Jeep—near a New Mexico State Police (NMSP) officer, waived the officer down, and started asking questions about an unrelated civil matter. *Id.* During the conversation, another NMSP officer arrived and approached the passenger side of Defendant's vehicle. *Id.* The second officer asked Defendant's passenger, Victor Hugo Lopez-Maldonado, where he was from, and Mr. Lopez-Maldonado replied that he was from Guatemala. *Id.* Defendant told the officers that Mr. Lopez-Maldonado was his friend who had once helped Defendant get his vehicle unstuck and, noticing Mr. Lopez-Maldonado

walking down the street, Defendant offered him a ride. *Id.* at 1-2. The officers suspected Mr. Lopez-Maldonado was the same man who ran from Border Patrol agents earlier that day. *Id.* at 2. The officers requested assistance from Border Patrol, and upon questioning by Border Patrol agents, Mr. Lopez-Maldonado admitted to being in the country illegally. *Id.* Both Defendant and Mr. Lopez-Maldonado were arrested. *Id.*

At the Border Patrol station, Defendant claimed he encountered Mr. Lopez-Maldonado sitting on the side of the road in Sunland Park, New Mexico, near the border of the United States and Mexico, and Mr. Lopez-Maldonado requested a ride. *Id.* Defendant claimed he did not know Mr. Lopez-Maldonado was in the United States illegally and was not being paid by Mr. Lopez-Maldonado or anyone else to give him a ride. *Id.*

Conversely, Mr. Lopez-Maldonado claimed that once he entered the United States, the person who smuggled him from Mexico told him by phone that he would be picked up by a Jeep. *Id.* Once Mr. Lopez-Maldonado was picked up by Defendant in a Jeep, Mr. Lopez-Maldonado claimed that Defendant asked him for money and, when Mr. Lopez-Maldonado refused, Defendant told Mr. Lopez-Maldonado that Defendant would harm Mr. Lopez-Maldonado's family in Guatemala. *Id.*

Defendant waived indictment and was charged by information with transporting illegal aliens and aiding and abetting, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii), (a)(1)(B)(ii), and (a)(1)(A)(v)(II). Waiver of Indictment at 1, ECF No. 20; Information, ECF No. 18. Defendant signed a Plea Agreement under Federal Rule of Civil Procedure 11(c)(1)(C), agreeing to plead guilty. Agreement at 1-2, ECF No. 21. Defendant, in his Admission of Fact, admits to knowingly transporting an illegal alien "who [Defendant] knew was not lawfully present in the United States." *Id.* at 5. Defendant admits that "I knew what I was doing was illegal, but I did it anyway." *Id.* The

Admission of Fact section contains a boilerplate sentence preceding the admission narrative that reads "I recognize and accept responsibility for my criminal conduct." *Id.*

Under the Agreement, both parties agreed to use the federal sentencing guidelines to determine Defendant's sentencing range. *Id.* at 3. The Parties agreed to a sentence

> within the resulting sentencing guideline range after the application of USSG § 2L1.1(b) adjustments for specific offense characteristics to the defendant's base offense level, minus a two-level downward adjustment for minor role in the offense, minus the *applicable downward adjustment for acceptance of responsibility*, and minus the three-level downward departure pursuant to USSG § 5K3.1 . . . .

*Id.* at 4 (emphasis added).

At Defendant's Sentencing Hearing before the Court, Defendant, when asked what he would like to say before he was sentenced, said "[i]t wasn't my intention[] to, you know—to break the law . . . I just picked up a—mainly, a Samaritan act that cost me my freedom, but it wasn't for any financial gain or anything, it just was a simple ride that I gave to the people." Tr. of Hr'g of June 18, 2025 at 6: 14-19.[1] When asked to clarify, the Defendant said "I just picked [Mr. Lopez-Maldonado] up. I gave him a ride. He was walking, and I thought he was going to school and I was heading that way. And I got stopped by the police officer, and it ended up that he was an illegal alien." *Id.* at 6:22 – 7:1.

The Court asked Defendant if he knew Mr. Lopez-Maldonado was an undocumented person. *Id.* at 7:2-3. Defendant replied, "No. He didn't look like one." *Id.* at 7:4. The Court then asked if Defendant was transporting Mr. Lopez-Maldonado for financial gain. *Id.* at 7:5-6. The Defendant said he was not. *Id.* at 7:7. The Court asked if Defendant had made a deal with transporters of illegal aliens. *Id.* at 7:8-9. Defendant said he had not. *Id.* at 7:10. At that point, the

---

[1] Neither party ordered the transcript. The Court cites to the Court reporter's original rough draft of the hearing transcript. Any final transcript may contain slightly different page and/or line numbers.

Court asked the attorneys why Defendant was getting acceptance of responsibility as part of his plea deal. *Id.* at 7:11.

The Government said that Defendant "made a sufficient factual basis at the time of the plea . . . [but] [n]ow he's having issues with his knowledge about whether or not the person was here illegally." *Id.* at 7:17-20. Defendant then told the Court that Defendant did not know Mr. Lopez-Maldonado was an illegal alien when Defendant picked him up but that "I knew he was an illegal alien because . . . the officers told me he was an illegal alien." *Id.* at 7:25 – 8:7. Defendant also insisted that he did not know he was transporting Mr. Lopez-Maldonado in violation of the law until he was "stopped." *Id.* at 8:15-17. Defendant admitted to asking Mr. Lopez-Maldonado for money because "[he] didn't have [any] money at the time" but denied threatening Mr. Lopez-Maldonado's family. *Id.* at 12:10 – 13:7.

Based on Defendant's statements and the Court's concern with the acceptance of responsibility portion of the Agreement, the Court gave Defendant two weeks to brief the meaning of the term "applicable" as used in the acceptance of responsibility section of the Agreement and gave the Government two weeks to respond. *Id.* at 16-18; Clerk's Min. for June 18, 2025 Hr'g, ECF No. 31. Defendant did not timely file a brief.

On October 27, 2025, 116 days after the deadline to file a brief, Defendant filed the Memorandum. ECF No. 32. In the Memorandum, Defendant states that the Agreement anticipates "a downward adjustment for acceptance of responsibility" and asks the Court to honor the Agreement. *Id.* at 2. Defendant argues that the word "applicable" as it pertains to acceptance of responsibility means there must be either a two- or three-level downward adjustment for acceptance of responsibility and states that Defendant's counsel explained to Defendant that is what the Agreement meant. *Id.* Defendant also states "applicable" does not mean that there is a

4

potential for "zero points of credit" for acceptance of responsibility under the Agreement, nor was that meaning contemplated during negotiations. *See id.* at 3.

Defendant also claims his statements at the hearing were "confused." *Id.* Defendant includes as an attachment to the Memorandum a signed statement by Defendant stating he is "sorry for not speaking correctly at my sentencing hearing" due to his nervousness, acknowledging his guilt, and "accept[ing] responsibility for breaking the law." Acceptance of Responsibility Statement at 1-2, ECF No. 32-1.

## II. Legal Standards

### A. Plea Agreement Interpretation

In interpreting plea agreements, the Court "rel[ies] on general principles of contract law." *United States v. Rodriguez-Rivera*, 518 F.3d 1208, 1212 (10th Cir. 2008) (citing *United States v. Cachucha*, 484 F.3d 1266, 1270 (10th Cir. 2007)). The Court looks "to the express language in the agreement to identify both the nature of the government's promise and the defendant's reasonable understanding of this promise at the time of the entry of the guilty plea." *Id.* at 1212-13 (quoting *United States v. VanDam*, 493 F.3d 1194, 1199 (10th Cir. 2007)). Ambiguities are construed against the Government as the drafter of the agreement. *Id.* at 1213. Agreements are interpreted according to the defendant's reasonable understanding of the terms. *United States v. Scott*, 469 F.3d 1335, 1338 (10th Cir. 2006).

### B. Acceptance of Responsibility

"Whether the facts of a particular case warrant a reduction for acceptance of responsibility is a question of fact . . . ." *United States v. Dazey*, 403 F.3d 1147, 1172 (10th Cir. 2005) (quoting *United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004)). "Defendant must prove that he is entitled to [an] offense level reduction [based on acceptance of responsibility] by a preponderance

of the evidence." *United States v. McMahon*, 91 F.3d 1394, 1396-97 (10th Cir. 1996). "[T]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility." *United States v. Ivy*, 83 F.3d 1266, 1292 (10th Cir. 1996) (quoting U.S.S.G. § 3E1.1, Application Note 5), *cert. denied*, 519 U.S. 901 (1996).

"Some appropriate considerations in making [an acceptance of responsibility] determination include: (1) whether the defendant truthfully admitted the conduct underlying his offense; (2) whether he fully terminated his criminal conduct; and (3) the timeliness of his admissions, if any." *United States v. McGehee*, 672 F.3d 860, 877 (10th Cir. 2012).

"[W]hen a defendant does not truthfully and completely admit his involvement in the offense, he has failed to carry his burden of demonstrating 'recognition and affirmative acceptance of personal responsibility for his criminal conduct.'" *United States v. Topete-Plascencia*, 351 F.3d 454, 460 (10th Cir. 2003) (quoting *United States v. Bindley*, 157 F.3d 1235, 1241 (10th Cir. 1998)). Nor is a defendant entitled to an acceptance of responsibility adjustment when his admissions to wrongdoing are untimely and incomplete. *McMahon*, 91 F.3d at 1397.

### III. Discussion

The Court interprets the Agreement before explaining why Defendant is not entitled to a downward adjustment for acceptance of responsibility.

**A. The Agreement expressly grants Defendant only an applicable adjustment for acceptance of responsibility as determined by the Court, and Defendant's interpretation of the Agreement does not control where language is clear.**

Defendant believes the language "minus the *applicable* downward adjustment for acceptance of responsibility" in the Agreement binds the Court to apply either a two- or three-level downward adjustment in sentencing for acceptance of responsibility. Tr. of Hr'g of June 18, 2025

6

at 15:20-24; Mem. at 2-3, ECF No. 32 (emphasis added). Defendant states in the Memorandum that Defendant did not contemplate "zero points" for acceptance of responsibility. Mem. at 3, ECF No. 32.

In interpreting the Agreement, the Court is bound by principles of contract law. *Rodriguez-Rivera*, 518 F.3d at 1212-13. First, the Court looks to the express language of the Agreement to determine both the Government's promise and Defendant's reasonable understanding. *Id.* Where there are ambiguities, the Court construes an agreement against the Government, as drafter, *id.*, and resolves ambiguities in accordance with Defendant's reasonable understanding of the terms, *Scott*, 469 F.3d at 1338.

Here, the Court finds there are no ambiguities in the portion of the Agreement at issue. The Agreement expressly grants Defendant the benefit of the "applicable" downward adjustment for acceptance of responsibility, meaning there is some difference between what may or may not apply. Agreement at 4, ECF No. 21. As there are no ambiguities, the Court turns to the language of the Agreement to determine both the Government's promise and Defendant's reasonable understanding.

The Court finds the Government promised that Defendant is entitled to downward adjustments that apply to Defendant based on his acceptance of responsibility.

The Court further finds that Defendant's reasonable interpretation of the Agreement must both (1) assess the acceptance of responsibility provision against similar contract provisions and (2) give reasonable meaning to the word "applicable."

As to similar contract provisions, the acceptance of responsibility provision is quite clearly different than other similar provisions in which the parties agreed to specific departures and adjustments. Paragraph nine contains all downward departures and adjustments agreed to by the

7

Parties. Two are specific. Only acceptance of responsibility is not. The Parties agreed to "a *two-level* downward adjustment for minor role in the offense, minus *applicable* downward adjustment for acceptance of responsibility, and minus the *three-level* downward departure pursuant to USSG § 5K3.1 [Early Disposition Programs]." Agreement at 4, ECF No. 21 (emphasis added). The Parties knew how to contract for a specific downward adjustment for acceptance of responsibility and could have done so if they wished. They did not. Instead of a specific downward adjustment, the Parties used the word "applicable," which means "[c]apable of being applied; fit and right to be applied." *Applicable, Black's Law Dictionary* (12th ed. 2024). As the acceptance of responsibility is different than the specific provisions, the Court must interpret it to apply the word "applicable" rather than a specific downward adjustment.

As to the meaning of "applicable" here, Defendant argued in the June 18, 2025 Hearing that "applicable" means the Court must select between a two- and three-level downward adjustment. Tr. of Hr'g of June 18, 2025 at 15:20-24. Defendant appears to believe "applicable" indicates the Court must choose *which* downward adjustment applies. The Court, however, finds nothing in the Agreement that indicates "applicable" should be interpreted to mean either a two- or three-level downward adjustment applies. Instead, the definition "[c]apable of being applied; fit and right to be applied" indicates that "applicable" here means *whether* a downward adjustment is "fit and right to be applied," and, if so, which one.

The United States Sentencing Guidelines reinforce this interpretation. The Guidelines make application of an adjustment contingent on Defendant's behavior, not on the parties' agreement. U.S.S.G. § 3E1.1(a) ("*If* the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.") (emphasis added). And the Court is the arbiter of whether the defendant has so behaved, meaning whether the downward

8

adjustment applies or not. *See* U.S.S.G. § 3E1.1, Application Note 5 (explaining that the determination of the sentencing judge is entitled to great deference on review because "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility").

This reading is even more apparent when considering the structure of U.S.S.G. § 3E1.1. The Parties agreed to use the federal sentencing guidelines to determine Defendant's sentencing range. Agreement at 3, ECF No. 21. The guidelines provide for a two-level downward adjustment only "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). An additional one-level downward adjustment applies if the defendant is qualified for the two-level decrease and "timely notif[ies] authorities of his intention to enter a plea of guilty." U.S.S.G. § 3E1.1(b).

Defendant insists "applicable" means U.S.S.G. § 3E1.1(a) applies, leaving the Court with two options: does U.S.S.G. § 3E1.1(b) apply or not. But whether a downward adjustment is "applicable" is a choice between whether U.S.S.G. § 3E1.1(a) applies or not, and, if it does apply, whether U.S.S.G. § 3E1.1(b) also applies. There are obviously three options: (1) U.S.S.G. § 3E1.1(a) does not apply, (2) U.S.S.G. § 3E1.1(a) applies but U.S.S.G. § 3E1.1(b) does not, and (3) both U.S.S.G. § 3E1.1(a) *and* U.S.S.G. § 3E1.1(b) apply. That leaves three possible downward adjustments: none, two levels, and three levels.

As Defendant's current interpretation (1) seeks a specific downward adjustment for acceptance of responsibility despite the clear difference between "applicable" acceptance of responsibility and two adjacent, specific, reductions and (2) interprets "applicable" to guarantee the application of two levels under U.S.S.G. § 3E1.1(a), the Court finds this interpretation unreasonable. Agreement at 4, ECF No. 21. Instead, the Court finds the only reasonable interpretation is that the Agreement provides that Defendant receives the applicable downward

9

adjustment, as determined by the Court, for acceptance of responsibility based on the circumstances of the case in accordance with U.S.S.G. § 3E1.1. The Court will therefore determine below how much of a downward adjustment applies to Defendant based on acceptance of responsibility: none, two levels, or three levels, *see infra section* III.B.[2]

Finally, Defendant argues in the Memorandum that Defendant understood "applicable" to mean selecting between a two- and three-level departure because Defendant's counsel explained to Defendant that acceptance of a plea agreement means a two- or three-level departure and "zero points of credit for a client who signs their agreement and then pleads guilty isn't . . . thought of during negotiations." Mem. at 2-3, ECF No. 32. Defendant waived that argument because the Memorandum is untimely by 116 days. *See* Mem., ECF No. 32; Clerk's Min. for June 18, 2025 Hr'g, ECF No. 31.

If the Court were to consider that argument, however, the Court finds it unavailing. First, what Defendant's counsel conveyed to Defendant regarding a plea agreement has no bearing on the Court's interpretation of the agreement. To rule otherwise would permit defendants to circumvent plain language in plea agreements at will. Second, while the Court must construe agreements according to defendants' reasonable understanding, the Court cannot contravene express language in plea agreements. *Scott*, 469 F.3d at 1338; *Rodriguez-Rivera*, 518 F.3d at 1212-13. Instead, the Court is obligated to *first* look to the express language of the agreement to

---

[2] Moreover, this interpretation of "applicable acceptance of responsibility" is consistent with previous cases in this district where defendants have disclaimed acceptance of responsibility by their actions after seeking a downward adjustment as part of a guilty plea. *See United States v. Trujillo*, Case No. 22-cr-01965-DHU-1 Presentence Investigation Report at 5-6, ECF No. 46 (D.N.M. 2023) (declining to apply acceptance of responsibility after plea because defendant absconded); *United States v. Winard*, Case No. 20-cr-01568-MV-1 Addendum to Presentence Investigation Report at 2-3, ECF No. 45 (D.N.M. 2025) (declining to apply acceptance of responsibility because defendant did not cease criminal conduct following his plea); *United States v. Estupian-Rivera*, Case No. 18-cr-03075-MIS-1 Presentence Investigation Report at 1, ¶ 23, ECF No. 47 (D.N.M. 2025) (declining to apply acceptance of responsibility after plea because defendant absconded).

understand both the government's promise and the defendant's reasonable understanding. *Rodriguez-Rivera*, 518 F.3d at 1212-13. Only when the language is ambiguous does the Court turn to the defendant's reasonable interpretation and construe language against the government. *See id.* at 1213.

Defendant is asking the Court to reverse its obligation. Defendant wishes the Court to find the word "applicable" creates ambiguity based on Defendant's interpretation of the Agreement. And then Defendant wants the Court to interpret that ambiguity in favor of Defendant based on Defendant's understanding. That is not the law.

**B. No downward departure for acceptance of responsibility applies because Defendant did not accept responsibility for his offense.**

Defendant believes, based on the statement in the plea agreement, that he is eligible for an acceptance of responsibility adjustment. Agreement at 5, ECF No. 21; Tr. of Hr'g of June 18, 2025 at 15:20-24. Defendant also points to the Acceptance of Responsibility Statement he attached to the Memorandum, which is untimely. Acceptance of Responsibility Statement at 1-2, ECF No. 32-1; Clerk's Min. for June 18, 2025 Hr'g, ECF No. 31. Even if the Memorandum were not untimely, however, the Court, based on Defendant's statements at the June 18, 2025 Hearing, finds Defendant has not accepted responsibility for his offense and therefore there is no applicable downward adjustment for acceptance of responsibility under the sentencing guidelines.

While the court is not obligated to detail its reasons for granting or denying acceptance of responsibility, it will do so here to avoid further confusion. *United States v. Bowen*, 437 F.3d 1009, 1019 (10th Cir. 2006) ("We do not require a district court 'to make detailed findings, or explain why a particular adjustment [under the guidelines] is or is not appropriate.'") (alteration in original) (citation omitted).

11

Reductions in sentence length based on acceptance of responsibility have both a practical and philosophical purpose. As a practical matter, acceptance of responsibility justifies sentence length reduction, which entices defendants to sign a plea agreement. The defendant receives a lower sentence than he might receive at trial. The government exchanges the defendant's agreement to a lower sentence for time it can allocate to other cases.

As a philosophical matter, acceptance of responsibility is one of the fundamental purposes of the legal system. The system exists partly to rehabilitate defendants by imbuing in them a sense of accountability for their actions. Defendants are eligible for reductions to their sentence based on a sincere acceptance of responsibility because one aspect of the purpose of sentencing has been fulfilled.

This is reflected in both the Federal Rules of Criminal Procedure: "[w]here the defendant has acknowledged his guilt and shown a willingness to assume responsibility for his conduct, it has been thought proper to recognize this in sentencing," Fed. R. Crim. P. 11 advisory committee's note to 1974 Amendment, and in the non-binding Federal Sentencing Guidelines: "[t]he reduction of offense level provided by this section recognizes legitimate societal interests . . . a defendant who clearly demonstrates acceptance of responsibility for his offense . . . is appropriately given a lower offense level than a defendant who has not demonstrated acceptance of responsibility," U.S.S.G. § 3E1.1, Background.

To make this determination, acceptance of responsibility requires an exchange between the defendant and the Court because the Court is in the best position to evaluate the sincerity of defendant's acceptance of responsibility. *Ivy*, 83 F.3d at 1292-93. The defendant must prove to the Court, by a preponderance of the evidence, that he accepts responsibility for his offense and holds himself accountable for his crime. *See McMahon*, 91 F.3d at 1396-97.

Acceptance of responsibility is a question of fact. *Dazey*, 403 F.3d at 1172. The facts concern both whether the defendant admits the truth of his offense and the defendant's sincerity, since truthful admission can be outweighed by conduct inconsistent with acceptance of responsibility. U.S.S.G. § 3E1.1, Application Note 3. Thus, to be eligible for acceptance of responsibility, defendants must first admit to the truth and then conduct themselves in a manner that shows some level of sincerity, remorse, or acknowledgement. *McGehee*, 672 F.3d at 877 ("[A]ppropriate considerations in making this determination include: (1) whether the defendant truthfully admitted the conduct underlying his offense . . . ."); *Topete-Plascencia*, 351 F.3d at 460 ("[W]hen a defendant does not truthfully and completely admit his involvement in the offense, he has failed to carry his burden of demonstrating 'recognition and affirmative acceptance of personal responsibility for his criminal conduct.'") (citation omitted).

Here, the Court has no doubt that Defendant is not entitled to a downward adjustment for acceptance of responsibility because he does not admit the truth, let alone demonstrate his sincerity. In the Agreement, Defendant acknowledged the truth, that he transported Mr. Lopez-Maldonado, despite knowing Mr. Lopez-Maldonado was an illegal alien, and did so to further Mr. Lopez-Maldonado's unlawful presence in the United States. Agreement at 5, ECF No. 21. In what could be considered the "boiler plate" language about that admission, the Agreement states that "I recognize and accept responsibility for my criminal conduct." *Id.* On its own, with a minimal acknowledgement of responsibility at the Hearing, this might crest the preponderance of evidence standard required to grant a downward adjustment for acceptance of responsibility. But at the Hearing Defendant repudiated the Agreement by denying his truthful admission outright and claiming he had no idea he was breaking the law. Tr. of Hr'g of June 18, 2025 at 6:13 – 8:17.

In the Agreement, Defendant admitted "I knowingly transported an illegal alien, who I knew was not a U.S. citizen, and who I knew was not lawfully present in the United States." ECF No. 21 at 5. In the Hearing, Defendant stated that he did not know Mr. Lopez-Maldonado was an illegal alien before officers told him. Tr. of Hr'g of June 18, 2025 at 6:22 – 7:4.

In the Agreement, Defendant admitted to using "my personal vehicle to transport the illegal alien in furtherance of his unlawful presence in the United States and to assist him in remaining in the United States illegally." Agreement at 5, ECF No. 21. In the Hearing, Defendant claimed he thought Mr. Lopez-Maldonado was "going to school" and, since Defendant was "heading that way," Defendant would be a good guy and give him a ride. Tr. of Hr'g of June 18, 2025 at 6:22-24.

In the Agreement, Defendant said "I knew what I was doing was illegal, but I did it anyway." Agreement at 5, ECF No. 21. In the Hearing, the Court asked Defendant directly, "you didn't know you were transporting [Mr. Lopez-Maldonado] in violation of the law?" Tr. of Hr'g of June 18, 2025 at 8:13-14. Defendant replied, "No, not [until] I got stopped." *Id.* at 8:15. Defendant claims "a Samaritan act . . . cost me my freedom." *Id.* at 6:16-17.[3]

Acceptance of responsibility depends on admission of truth. Defendant admitted the truth in his Agreement and repudiated his Agreement in the Hearing. Defendant points to his untimely Statement attached to the Memorandum as an admission of truth. Untimely admissions do not entitle Defendant to an acceptance of responsibility adjustment. *McMahon*, 91 F.3d at 1397. Even

---

[3] Defendant's statements at the Hearing were like the lies he told officers at his arrest: that Mr. Lopez-Maldonado was a friend of his to whom he offered a ride, that Mr. Lopez-Maldonado requested a ride from Defendant, that Defendant did not know Mr. Lopez-Maldonado was in the United States illegally, and that Defendant was not being paid to transport Mr. Lopez-Maldonado. Compl. at 1-2, ECF No. 1. Defendant also told the Court at the Hearing he was "stopped" by police rather than admitting he waived police down to ask them questions about an unrelated civil matter. Tr. of Hr'g of June 18, 2025 at 6:25; Compl. at 1, ECF No. 1. This confirms the Court's conviction that Defendant has no desire to admit the truth of his actions.

if the admission were timely, the Court cannot believe Defendant has sincerely accepted responsibility when he only appears to admit the truth in writing, no doubt in a quiet room, and does not admit it in person under direct questioning. Acceptance of responsibility means Defendant has internalized accountability and remains accountable in any medium throughout the sentencing process. *See* U.S.S.G. § 3E1.1., Application Note 3 ("[E]vidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility."); *cf. United States v. Bacon*, 617 F.3d 452, 459 (6th Cir. 2010) (upholding the district court's rejection of a downward adjustment for acceptance of responsibility, despite the defendant accepting responsibility at his plea hearing, because the defendant wrote a post-plea letter denying responsibility and "made equivocal statements at sentencing that further indicated his failure to accept responsibility for his actions").

Usually, the Court is confronted with more dynamic circumstances, like absconding, when denying acceptance of responsibility. *See e.g., Estupian-Rivera*, Case No. 18-cr-03075-MIS-1 Plea Agreement ¶ 10, ECF No. 17; Presentence Report Memorandum at 1, ¶ 23, ECF No. 47 (explaining an acceptance of responsibility reduction was omitted in the amended Presentence Report because "the defendant failed to maintain contact with his pretrial officer and was considered an absconder from pretrial supervision for many years"). At least in those cases there is a good chance the defendants believed they did something illegal, hence their desire to run. Here, however, Defendant has shown no such awareness. Defendant actively denied his guilt to the Court. Therefore, the Court finds Defendant has not proven by a preponderance of the evidence that he accepts responsibility for his offense and, as a result, applies no downward adjustment to his sentence for acceptance of responsibility.

## IV. Conclusion

In sum, the Court finds that the Agreement between the Parties, in accordance with U.S.S.G. § 3E1.1, requires the Court to determine whether Defendant accepts responsibility for his offense and what downward adjustment to apply to his sentence based on acceptance of responsibility. The Court finds Defendant has failed to prove by a preponderance of the evidence that he accepts responsibility for his offense and therefore the Court applies no downward adjustment to his sentence based on acceptance of responsibility under U.S.S.G. § 3E1.1.

Accordingly, it is **HEREBY ORDERED** that:

1. Defendant's request to apply a downward adjustment to his sentence based on acceptance of responsibility under U.S.S.G. § 3E1.1. is **DENIED** consistent with this Order;

2. The Court accepts the Plea Agreement as interpreted herein; and

3. A Sentencing Hearing is scheduled for 10:30 a.m. on December 9, 2025 to finalize Defendant's sentence in accordance with this Order.

_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE